UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| VUYANI ISAIAH OGLE, | |
| Plaintiff, | |
| v. | CAUSE NO. 1:23-CV-91-HAB-SLC |
| ADAM BUTLER, DAVID BUTLER, DAVID GLADIEUX, REID DAVIS, RICKY SEXTON, A. GRAHAM, MARK SICKAFOOSE, CHAD RAY, | |
| Defendants. | |

OPINION AND ORDER

Vuyani Isaiah Ogle, a prisoner without a lawyer, filed a complaint. ECF 21. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Ogle's complaint is based on alleged incident that occurred on or around December 27, 2022. Ogle was leveling up[1] from "the Hole" to the segregation unit in

_____

[1] Ogle explains that if an inmate is sentenced to time in the Hole, when that sentence is complete, he "levels up" to the segregation unit, where he has more privileges than in The Hole, but is still more restricted than in general population. After successfully completing time in the segregation unit without

H&K Block, when his new cellmate told Officer Ricky Sexton, that if he did not remove either himself or Ogle from the cell, he would physically assault Ogle. ECF 21 at 2. Officer Sexton pulled the cellmate out of the cell to investigate the situation, but put them together again after Shift Command Adam Butler said the two could cohabitate for a night. *Id.* After Ogle complained about his safety, Sexton placed him in the attorney booth located in the sally port of the Hole while seeking a resolution.

As a solution, Officers Sexton, Davis, and Graham told Ogle they were going to place him in the cell next to his original placement. ECF 21 at 2. Ogle disputed that placement, as the inmate in that cell had recently sent his cellmate to suicide prevention three times in one day. *Id.* However, the other cells were not available, as one had three inmates in it already and the other housed a "2-man rule" inmate—an inmate who is not allowed to have a cellmate and is known to be violent or aggressive. *Id.*; ECF 21-1 at 44. Davis told Ogle there was nowhere else to place him, and he was placed in the cell next to his original placement over his objection. ECF 21 at 3.

After being rehoused in the neighboring cell, Ogle noticed rule infractions that would cause conflict between him and his new cellmate. The new cell had two beds, but the other inmate's belongings were on the second bunk, preventing Ogle from using it. To stave off conflict, Ogle asked Officer Davis for a "boat," a temporary bed to elevate inmates off the concrete floor. *Id.* Davis told Ogle there were two beds and two inmates,

---

any rule infractions, an inmate may level up from there. To level up, an inmate must go 30 days without any rule infractions. ECF 21-2 at 44-45.

so he did not qualify for a boat. Ogle then asked Davis to order the inmate to remove all belongings from his bunk. Davis said Ogle could remove the items himself.

When Ogle went to remove the belongings, the inmate threatened him, and Ogle again requested a boat. This request was denied, and Ogle was forced to choose between removing the inmate's belongings or sleeping on the concrete floor. He ended up putting his mat on the floor and sleeping there, though he does not say how long he stayed there. Ogle claims that he now suffers from lower back pain and muscle spasms, and he is emotionally and psychologically distraught at the indifference to his health, safety, and well being.

Ogle's allegations implicate his right as a pretrial detainee under the Fourteenth Amendment to be protected from harm. "Incarcerated people have a clearly established right to be free from physical harm inflicted by others in the institution." *Kemp v. Fulton Cnty.*, 27 F.4th 491, 494 (7th Cir. 2022) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) ("[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.")). A pretrial detainee states a viable failure to protect claim under the Fourteenth Amendment when he alleges:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and

(4) By not taking such measures, the defendant caused the plaintiff's
injuries.

*Id.* at 496 (emphasis omitted) (quoting *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th
Cir. 2016) (en banc)). As to the second element, the Seventh Circuit has equated
"substantial risk" to "risks so great that they are almost certain to materialize if nothing
is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005). The third element "requires
only that the defendant's conduct be objectively unreasonable." *Kemp*, 27 F.4th at 497.
Overall, reasonableness "must be determined in light of the totality of the
circumstances." *Pulera v. Sarzant*, 966 F.3d 540, 550 (7th Cir. 2020).

Here, Ogle does not state a failure to protect claim, as no physical harm came to
him from either his first or his second cellmate. After being threatened by the first
cellmate, prison officials eventually removed him from the cell before any harm came to
him. Similarly, he was never harmed by his second cellmate. Though the situation was
undoubtably tense, the Fourteenth Amendment protects a person from the threat of
physical harm, not temporary discomfort. *See Kemp*, 27 F.4th at 494; *Bell v. Wolfish*, 441
U.S. 520, 534 (1979) (pretrial detainees do not have a fundamental liberty interest to be
"free from discomfort"). There are no facts to support a reasonable inference that his
cellmate physically harmed him or posed a substantial threat of harm.

The court next considers whether Ogle states a claim based on having to sleep on
a mat on the floor, instead of a bunk or a boat. The Fourteenth Amendment guarantees
inmates "the minimal civilized measure of life's necessities," which includes
"reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities."

*Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (quotation marks omitted).

Sleeping on a mat on the floor, rather than on an elevated bed, does not, by itself,

constitute a constitutional violation. *See Randle v. Gladieux*, No. 1-21-CV-425-HAB-SLC,

2022 U.S. Dist. LEXIS 26855 at *3-4 (N.D. Ind. Feb 15, 2022) ("[S]leeping on a mat on the

floor, while uncomfortable, does not deprive a person of the minimal civilized measure

of life's necessities."); *Rodmaker v. Krienhop*, No. 4:14-CV-070-TWP-TAB, 2014 U.S. Dist.

LEXIS 100067 at *6 (S.D. Ind. July 23, 2014) ("[S]leeping on the floor does not punish a

detainee so long as jail officials provide a mattress."). Ogle does not allege any facts that

would suggest sleeping on the floor was problematic for him for the time he was

housed with that cellmate.

Ogle also alleges his secondary jumpsuit and thermals were stolen by his

cellmate prior to him being rehoused, and he blames the Officer Sexton for not

preventing the theft. ECF 21 at 4. The Fourteenth Amendment provides that State

officials shall not "deprive any person of life, liberty, or property, without due process

of law." But a State tort claims act which provides a method to seek reimbursement for

the negligent loss or intentional depravation of property meets the requirements of the

due process clause by providing due process of law. *Hudson v. Palmer*, 468 U.S. 517, 533

(1984) ("For intentional, as for negligent deprivations of property by state employees,

the state's action is not complete until and unless it provides or refuses to provide a

suitable post deprivation remedy."). Indiana's tort claims act (Indiana Code § 34-13-3-1

*et seq*.) and other laws provide for state judicial review of property losses caused by

government employees. Those State laws provide an adequate post deprivation remedy

to redress State officials' accidental or intentional deprivation of a person's property. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post deprivation remedy in the Indiana Tort Claims Act, and no more process was due."). Therefore, these alleged property losses do not state a constitutional claim.

Finally, Ogle claims that the defendants violated prison policy by failing to provide him with copies of the relevant documents and reports concerning the rehousing incident when he asked for them. A violation of prison policy, alone, does not state a constitutional claim. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices."). Therefore, Ogle's allegations that the defendants failed to follow prison policy do not state a claim for relief.

This complaint does not state a claim for which relief can be granted. If Ogle believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) GRANTS Vuyani Isaiah Ogle until **March 27, 2024**, to file an amended complaint; and

(2) CAUTIONS Vuyani Isaiah Ogle if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on February 21, 2024.

s/Holly A. Brady
CHIEF JUDGE
UNITED STATES DISTRICT COURT